[Cite as *State v. Ryan*, 2012-Ohio-1265.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-173 |
| | ) | |
| GARY E. RYAN, JR. | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Criminal Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 10CR862

JUDGMENT:   Affirmed

APPEARANCES:
For Plaintiff-Appellee   Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant   Attorney E. Kelly Mihocik
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus Ohio 43215

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 23, 2012

DONOFRIO, J.

{¶1} Defendant-appellant, Gary Ryan, Jr., appeals from a Mahoning County Common Pleas Court judgment convicting him of carrying a concealed weapon and having a weapon while under a disability, following a jury trial.

{¶2} On August 9, 2009, at approximately 2:00 a.m., Austintown Police Officer Christopher Collins was on foot patrol in the Wedgewood Plaza parking lot. The plaza houses several bars and a bowling alley, which were all closing, and the parking lot was full of patrons making their way to their cars. Officer Collins approached a Lincoln Continental and observed the occupants of the car. Two women were seated in the front and appellant was seated in the back.

{¶3} According to Officer Collins, as he made conversation with the woman in the driver's seat, he noticed that appellant did not want to make eye contact with him and kept moving his hands around so they were not visible to Officer Collins. Officer Collins told appellant to show him his hands and appellant did not comply. Officer Collins illuminated the inside of the car with his flashlight and went around to appellant's side of the car. While he was doing this, Officer Collins noticed appellant lean forward and put his hands near his waistband. He then noticed appellant's body move forward and his arms reach under the passenger seat. Officer Collins shined his flashlight in the area under the seat where appellant had reached. There he saw the handle and the rear slide of a handgun. Officer Collins then called for backup. He retrieved the gun, which was loaded, from under the passenger seat and placed appellant under arrest.

{¶4} A Mahoning County Grand Jury indicted appellant on one count of having a weapon while under a disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(B), and one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A)(2)(F)(1).

{¶5} The matter proceeded to a jury trial where the jury found appellant guilty of both charges. The trial court subsequently sentenced appellant to five years in prison for having a weapon while under a disability and 18 months for carrying a concealed weapon. The court ordered appellant to serve his sentences consecutively for a total sentence of six-and-a-half years.

**{¶6}** Appellant filed a timely notice of appeal on November 16, 2010.

**{¶7}** For ease of discussion, we will address appellant's second and third assignments of error first. These assignments of error share a common factual basis. Therefore, we will address them together.

**{¶8}** "THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO CONVICT MR. RYAN OF CARRYING A CONCEALED WEAPON BECAUSE OFFICER COLLINS TESTIFIED THAT THE GUN WAS IN PLAIN VIEW."

**{¶9}** "MR. RYAN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THERE IS NO CREDIBLE EVIDENCE THAT MR. RYAN POSSESSED THE GUN OR THAT HE ATTEMPTED TO CONCEAL THE WEAPON."

**{¶10}** Appellant first argues here that the evidence was insufficient to convict him of carrying a concealed weapon because the gun was not concealed. He points to Officer Collins's testimony that when he got to the passenger side of the vehicle, it was immediately apparent that there was a gun under the passenger seat (Tr. 176) and that the rear part of the gun was in plain view (Tr. 205).

**{¶11}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶12}** Appellant does not assert that the evidence was insufficient to convict him of having a weapon while under a disability. Thus, this section of the analysis only addresses appellant's conviction for carrying a concealed weapon.

{¶13} Appellant was convicted of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which provides:

{¶14} "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:

{¶15} "* * *

{¶16} "(2) A handgun other than a dangerous ordnance."

{¶17} Pursuant to R.C. 2923.12(A)(2), the state had to provide evidence that appellant knowingly carried or had a handgun, concealed on his person or concealed ready at hand. Appellant asserts that the state failed to prove that the handgun here was concealed.

{¶18} We must examine Officer Collins's testimony as to appellant's actions and the gun. Officer Collins testified that while he was talking with the woman in the driver's seat of the car, appellant would not make eye contact with him and kept moving his hands around where the officer could not see them. (Tr. 171). Officer Collins told appellant to show him his hands but appellant did not comply. (Tr. 172). Officer Collins then went around the car from the front driver's side around the back to the back passenger side where appellant was seated. (Tr. 173). During this time, Officer Collins kept his flashlight on appellant so he could watch him. (Tr. 173). He noticed that appellant was leaning forward with his hands going towards his waistband. (Tr. 173). Officer Collins then saw appellant's whole body go forward with his arms reaching underneath the passenger seat in front of him. (Tr. 173-74). At this point, Officer Collins had not yet observed the gun.

{¶19} When Officer Collins reached the area where appellant was sitting, appellant sat up. (Tr. 174). Officer Collins then illuminated the area appellant had been reaching for. (Tr. 174-75). It was then that Officer Collins saw the "rear end slide of a handgun." (Tr. 175). Officer Collins stated that the gun was partially concealed under the seat. (Tr. 175). But when he did actually see the object under the seat, Officer Collins stated that it was immediately apparent the object was a gun. (Tr. 175-76).

{¶20} On cross examination, Officer Collins further testified that prior to getting appellant out of the car, "from where I was standing, I could see the plain view of the rear part of the gun and the top part of the slide." (Tr. 205). Appellant relies on this statement to support his argument that the gun was not "concealed."

{¶21} But what appellant fails to take into consideration is that the jury very likely found that appellant concealed the gun when Officer Collins first approached the car. When viewing the evidence in a light most favorable to the state, as we are required to do, there was sufficient circumstantial evidence from which to infer that when Officer Collins approached the car appellant put the gun into his waistband (concealing it) and then while Officer Collins walked around the car appellant removed the gun from his waistband, obscured it from view with his body (concealing it again) and placed it under the passenger seat (attempting to conceal it).

{¶22} According to Merriam-Webster's Online Dictionary, to "conceal" something is "to prevent disclosure or recognition of" or "to place out of sight." That is what appellant did by placing the gun first in his waistband and then in front of his body. He also attempted to conceal the gun when he placed it under the seat. Thus, even if the gun was in plain view when Officer Collins saw the rear end of it under the passenger seat, the element of "concealment" had already been met. Therefore, there was sufficient evidence on which the jury could find appellant guilty of carrying a concealed weapon.

{¶23} Second, appellant argues that both of his convictions are against the manifest weight of the evidence. He claims the state failed to produce any credible evidence that he had knowledge the gun was under the passenger seat. Appellant points out that Officer Collins did not testify that he saw appellant remove anything from his pocket or waistband and did not testify that he saw appellant hold the gun. Furthermore, he directs us to his own testimony that he did not place the gun under the passenger seat.

{¶24} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the

evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶25} Yet, granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212 (1967). Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶26} In addition to carrying a concealed weapon, the jury convicted appellant of having a weapon while under a disability in violation of R.C. 2923.13(A)(2), which provides:

{¶27} "(A) Unless relieved from disability * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

{¶28} "* * *

{¶29} "(2) The person * * * has been convicted of any felony offense of violence * * *."

**{¶30}** Along with Officer Collins's testimony set out above, we must also consider the rest of the evidence in determining whether the jury's verdict was against the manifest weight of the evidence.

**{¶31}** In addition to his previous testimony, Officer Collins stated that the gun he recovered from under the seat was loaded with 14 live rounds of ammunition. (Tr. 179-80). He further testified that at no time did he observe anyone else in the back seat of the vehicle other than appellant. (Tr. 180). And he testified that the two women who were in the front seat of the car were not arrested. (Tr. 183).

**{¶32}** Detective-Sergeant Jeffrey Solic identified a certified copy of a journal entry indicating that appellant had a previous conviction for aggravated robbery with a firearm specification. (Tr. 214-15; Ex. 3). Detective Solic testified that this was an offense of violence that prohibited appellant from using, owning, or possessing a firearm. (Tr. 214-15).

**{¶33}** James Smith, a forensic scientist in the firearms and tool mark unit at the Ohio Bureau of Criminal Identification and Investigation, tested the gun recovered from the car and testified that it was in good working order. (Tr. 226).

**{¶34}** Appellant testified in his own defense. He stated that he, Valerie Green, and Sharlisa Ferguson were in the Wedgewood Plaza parking lot talking with some friends when Officer Collins came up and shined his flashlight on them. (Tr. 247). Appellant stated that the group separated and went to their cars. (Tr. 247). He stated that Officer Collins followed him to Green's car. (Tr. 248). Appellant got into the back seat of the car. (Tr. 248). He testified that Officer Collins approached the vehicle, tapped on the back window, and asked him what was in his right back pocket. (Tr. 249). Appellant stated that he showed the officer that his pockets were empty. (Tr. 249-50). He stated that Officer Collins then told him not to move and walked around to the other side of the car. (Tr. 250). Appellant stated that the officer opened his door, pulled him out, and handcuffed him. (Tr. 250). Appellant testified that Officer Collins asked him if there was marijuana in the car. (Tr. 215). He testified that no mention was made of a gun until the officer placed him in the back of his cruiser. (Tr. 252).

{¶35} Appellant denied putting his hands in his waistband, denied reaching under the seat, and denied putting a firearm under the seat. (Tr. 253).

{¶36} Finally, Valerie Green, the woman in the driver's seat of the car testified. Green stated that while she, appellant, and Ferguson were sitting in her car in the parking lot, an officer approached them and tapped on the back passenger window where appellant was sitting. (Tr. 276). She stated that the officer did not speak with her first. (Tr. 277). Green testified that the officer took appellant out of the car and then asked her and Ferguson to exit also. (Tr. 277). She stated the officer searched her car and found a gun. (Tr. 277-78). Green also stated she had no knowledge of the gun and it did not belong to her. (Tr. 280).

{¶37} Given this evidence, along with the evidence set out above, we cannot conclude that the jury's verdict was against the manifest weight of the evidence. There are two conflicting versions of the evidence here, the version as testified to by Officer Collins and the version as testified to by appellant.

{¶38} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finder's determination of witnesses' credibility. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.*

{¶39} The jury was in the best position to observe the witnesses and determine whose version of the events was more credible. They chose to believe Officer Collins. And while Officer Collins did not actually witness appellant conceal or remove the gun from his waistband and place it under the seat, the circumstantial evidence he testified to as to appellant's furtive actions coupled with the gun he found under the seat in front of appellant could reasonably lead the jury to conclude that appellant possessed the gun and tried to conceal it from Officer Collins. Thus, the jury did not lose its way in this case.

{¶40} Accordingly, appellant's second and third assignments of error are without merit.

{¶41} Appellant's first assignment of error states:

{¶42} "IN THIS CASE, CARRYING A CONCEALED WEAPON AND HAVING A WEAPON WHILE UNDER A DISABILITY ARE ALLIED OFFENSES OF SIMILAR IMPORT AND ARE SUBJECT TO MERGER. THIS ACTION MUST BE REMANDED SO THAT MR. RYAN'S CONVICTIONS MAY BE MERGED."

{¶43} Appellant argues that in this case carrying a concealed weapon and having a weapon while under a disability are allied offenses of similar import and, therefore, the trial court should have merged them. Appellant contends that the state's case was based on his single act of placing a gun under the passenger seat while he was seated in the backseat of a car. Assuming that he did possess a gun, appellant argues that it was a single act committed with a single animus.

{¶44} Merger of allied offenses is a question of law. *State v. Taylor*, 7th Dist. No. 07-MA-115, 2009-Ohio-3334, ¶19. Therefore, we must apply a de novo standard of review.

{¶45} Pursuant to R.C. 2941.25, the merger statute:

{¶46} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶47} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶48} Shortly after appellant was sentenced, the Ohio Supreme Court decided the case of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus, wherein it held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of

the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)"

**{¶49}** *Johnson* changed the way courts are to analyze the issue of allied offenses of similar import. Under the old analysis, courts were to compare the elements of the offenses in the abstract in order to determine whether the elements corresponded to such a degree that the commission of one offense would result in the commission of the other offense. *Rance*, 85 Ohio St.3d at the syllabus. But now, under *Johnson*, 128 Ohio St.3d at the syllabus, courts are to consider the defendant's conduct in determining whether the offenses are of similar import.

**{¶50}** Even though *Johnson* changed the way we are to consider whether offenses are allied offenses of similar import, it did not provide us with a controlling test to use. This is because *Johnson* does not contain a majority opinion. Instead, it contains two plurality opinions and one minority opinion. "Our only new guidance is to consider the defendant's conduct and thus the particular facts of each case to determine whether the offenses are of similar import." *State v. Gardner*, 7th Dist. No. 10-MA-52, 2011-Ohio-2644, ¶23.

**{¶51}** The state relies on the case of *State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747. In that case, the Second District found that carrying a concealed weapon and having a weapon while under a disability were not allied offenses of similar import. In doing so, the court cited *State v. Rice*, 69 Ohio St.2d 422, 433 N.E.2d 175 (1982), where the Ohio Supreme Court found that carrying a concealed weapon and having a weapon while under disability were not allied offenses. It acknowledged that *Rice* was decided long before the Ohio Supreme Court's new test in *Johnson*, but it still found some of *Rice's* reasoning instructive:

**{¶52}** "'It may reasonably be concluded under the facts that the crimes were committed separately. It may reasonably be concluded that the gun involved here was that of the appellant, and it may be assumed that the appellant had procured the gun in question some time prior to the incident involved here when he concealed it from the view of Officer Vetter. For the purposes of R .C. 2923.13, the elements of proof for the violation of this statute were provided at the time the appellant, a person

under disability, originally acquired this firearm. The violation of this statute took place some time prior to Officer Vetter coming on the scene. The conduct of the appellant in carrying a concealed handgun under the front seat of the automobile constituted a separate and distinct act from that of his previously acquiring and possessing such handgun. Therefore, we may conclude that there is present here the separateness of the offenses as alluded to in subsection (B) of R.C. 2941.25.'" *Young*, at ¶47, quoting *Rice*, at 426-427.

**{¶53}** This analysis applies equally well to the facts at hand. Appellant, a person under a weapons disability, possessed a gun at some time prior to Officer Collins approaching Green's car. Thus, the offense of having a weapon while under a disability had already occurred before appellant encountered Officer Collins. Once Officer Collins approached the car, appellant concealed the gun from Officer Collins's view. This is when the carrying a concealed weapon offense took place. Because appellant's conduct resulted in two similar offenses that were committed separately and with a separate animus, he could be indicted on and convicted of both charges pursuant to R.C. 2941.25(B).

**{¶54}** Accordingly, appellant's first assignment of error is without merit.

**{¶55}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.
DeGenaro, J., concurs.