[Cite as *State v. Helms*, 2013-Ohio-5530.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 08 MA 199 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TARAN HELMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:         Appellant's Application for
                                                          Reconsideration.

JUDGMENT:                                       Application Denied.

APPEARANCES:

For Plaintiff-Appellee:                      Atty. Paul J. Gains
                                                          Mahoning County Prosecutor
                                                          Atty. Ralph M. Rivera
                                                          Assistant Prosecuting Attorney
                                                          21 West Boardman Street, 6th Floor
                                                          Youngstown, Ohio  44503

For Defendant-Appellant:                Atty. Gary Van Brocklin
                                                          P.O. Box 3537
                                                          Youngstown, Ohio  44513-3537

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                                                          Dated:  December 12, 2013

WAITE, J.:

{¶1}   Appellant Taran Helms requests reconsideration of our Opinion in *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147 ("*Helms II*"), pursuant to App.R. 26(A).  Appellant contends that we incorrectly held that his convictions for attempted murder and felonious assault were not allied offenses.  Appellant misstates our holding in *Helms II*.  While we did determine in his case that the two crimes were allied offenses, we also held that they should not merge at sentencing, because they were committed separately with separate animus.  *Id.* at ¶44-47.  As Appellant has not cited any obvious errors or raised any issues that were not considered in his direct appeal, the application for reconsideration is denied.

{¶2}   This case arose from the robbery and shooting of Joseph Kaluza as he was driving to a bank to make a deposit as part of his regular duties as manager of a Kentucky Fried Chicken restaurant in Youngstown.  Co-defendant Hattie Gilbert deliberately caused a traffic accident with Kaluza's vehicle.  Appellant then walked up and shot Kaluza in the neck.  Kaluza was alive but paralyzed after the shooting.  Appellant pushed Kaluza's vehicle to a more secluded spot, where he threatened to shoot Kaluza in the head.  He then took the deposit bag and fled.  Appellant and Gilbert were later apprehended and charged with several crimes stemming from the shooting and robbery.

{¶3}   The test generally applied in reviewing an App.R. 26(A) motion for reconsideration, "is whether the motion calls to the attention of the court an obvious error in its decision or raises an issue for the court's consideration that was either not considered at all or was not fully considered by the court when it should have been."

*State v. Wong*, 97 Ohio App.3d 244, 246, 646 N.E.2d 538 (4th Dist.1994). The underlying appeal is Appellant's second in this matter, owing to an Ohio Supreme Court remand. Appellant argues that we should have relied solely on the limited factual summary addressed in our last Opinion on the issue of merger as it appeared in *State v. Helms*, 7th Dist. No. 08 MA 199, 2010-Ohio-4872 ("*Helms I*"). Appellant contends that, if we had limited our analysis to the factual analysis conducted in *Helms I*, we should have found that the crimes were allied offenses and that they merged at sentencing.

{¶4} Appellant is aware that *Helms I* was overturned by the Ohio Supreme Court and remanded for us to once again review and determine whether his crimes were allied offenses. *State v. Helms*, 128 Ohio St.3d 352, 2011-Ohio-738, 944 N.E.2d 233, ¶3. The Ohio Supreme Court specifically stated that the first assignment of error in *Helms I,* dealing with allied offenses, was vacated. The Court specifically then remanded the matter for review in light of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. *Id. Johnson* significantly altered Ohio law regarding allied offenses as it had previously been interpreted under *State v. Rance*, 85 Ohio St.3d 632, 636, 710 N.E.2d 699 (1999). It is abundantly clear in *Helms II* that the section of *Helms I* dealing with allied offenses was vacated and remanded. *Helms II* at ¶1, 16. Therefore we conducted an entirely new review of the issue. This was considered and addressed in our Opinion.

{¶5} Since Appellant's application for reconsideration was filed, the Ohio Supreme Court has reviewed the crucial question as to what standard of review an

appellate court should use when dealing with the issue of allied offenses in light of *Johnson*. Obviously, the standard of review can significantly affect the outcome of an appeal. Although not expressly stated in *Helms II*, our normal standard of review for errors relating to allied offenses had always been *de novo*. *State v. Ryan*, 7th Dist. No. 10-MA-173, 2012-Ohio-1265; *State v. Taylor*, 7th Dist. No. 07 MA 115, 2009-Ohio-3334. We conducted such a review in *Helms II*. The Ohio Supreme Court has now confirmed that the correct standard for reviewing an issue regarding allied offenses is indeed *de novo*. Since we applied the correct standard of review in *Helms II*, there is no reason for us to reconsider our review. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶1. Although Appellant urges that we should have reviewed the issue under some lesser or more restrictive standard, it is apparent that we properly conducted a *de novo* review on this issue. We determined that the record revealed the crimes of attempted murder and felonious assault, although allied offenses, were committed separately and with separate animus, and therefore, should not merge.

{¶6} The Ohio Supreme Court has also recently held that an allied offense analysis requires a "review [of] the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with separate animus." *State v. Washington*, Slip Opinion No. 2013-Ohio-4982, syllabus. This again confirms that we conducted the proper allied offense review, because we reviewed the entire record instead of focusing only on those sections of the record that Appellant believes were relevant.

**{¶7}** The application for reconsideration is hereby denied.

Vukovich, J., concurs; see concurring opinion.

DeGenaro, P.J., dissents; see dissenting opinion.

VUKOVICH, J., concurs with Opinion, but writes separately to address the Dissent:

**{¶8}** While I concur with the decision to deny the motion for reconsideration, I write separately to address the dissent. There are three points of the dissent that I will be addressing: 1) its application of *State v. Washington*, Slip Opinion No. 2013-Ohio-4982; 2) its position that there is no evidence to support merger in the record; and 3) its reiteration that our decision in *Helms II* violates appellant's due process rights.

**{¶9}** In *Washington*, the Ohio Supreme Court held that "when deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *Washington* at ¶ 24.

**{¶10}** The dissent appears to conclude that this holding means if the evidence at trial supports the conclusion that the offenses were committed with separate conduct or a separate animus, but that the state never argued the exact theory that leads to that conclusion at either trial or sentencing, neither the trial court nor the appellate court could use such theory to find that the offenses do not merge. Dissent ¶ 24-29, 32. However, *Washington* does not confine the trial court to the arguments presented at trial and at the sentencing hearing. Rather, it states the **entire record** must be reviewed. As the reviewing court, we review merger decisions under a de novo standard of review, which means we also review the entire record. Under such review, we will affirm "a trial court's decision that is legally correct even if the appellate court uses grounds other than those set forth by the trial court." *State v. Garrett*, 7th Dist. No. 06BE67, 2007-Ohio-7212, ¶ 15 citing *State v. Peagler* (1996), 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996) and *Cook Family Invests. v. Billings,* 9th Dist. Nos. 05CA008689, 05CA008691, 2006-Ohio-764, at ¶ 19. In fact, the Ninth Appellate District has stated that an appellate court is bound to affirm a trial court's judgment that is legally correct on other grounds regardless of the arguments raised

or not raised by the parties." *State v. Ingram*, 9th Dist. No. 25843, 2012-Ohio-333, ¶ 7.

{¶11} The opinion in *Washington* also reiterates the long standing rule that the defendant bears the burden of establishing his entitlement to merger under R.C. 2941.25. *Washington* at ¶ 18, quoting *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). Thus, it is not the burden of the state to show that merger is required. Although inadvisable, the state may choose to stand silent (which is practically what the prosecutor did in this case, since it did not respond to or rebut the defense's merger argument). Such inaction by the state does not mean that the trial court, after reviewing all of the evidence, is required to merge the offenses merely because the state did not present any argument as to why the offenses should not merge. That would lead to an illogical result when the evidence applied to the law supports the conclusion that the offenses are not required to merge. The dissent's position is placing a reciprocal burden on the state to rebut the defendant's position and to argue each and every theory of why the offenses should not be merged.

{¶12} I do not believe *Washington* stands for this position because it specifically mandates the trial court, and this court by extension through its de novo review, to consider the **entire record**. Under a de novo standard of review, we are permitted to find a basis for not merging the offenses regardless of the state's inability or desire to set forth, at trial or on appeal, every possible theory of why the offenses should not merge. If the *Washington* Court wanted to constrain a trial court and reviewing court to only the arguments presented at trial and sentencing, the language that the Court used would have been limited to the arguments presented by the parties at trial and sentencing. It would not have the broad language that additionally requires the trial court to review the entire record.

{¶13} Therefore, for those reasons, *Washington* does not support the conclusion that our decision in *Helms II* was incorrect. On the contrary, that case indicates we were bound to consider the entire record.

{¶14} When a review of the entire record is considered, merger is not warranted. The dissent contends that the state conceded in its motion in opposition

to reconsideration that there was no evidence in the record that appellant pointed the gun at the victim while uttering the threat. Dissent ¶ 31. This is a misstatement of the concession. What the state conceded was that there was no "direct evidence" that appellant pointed his firearm while uttering the subsequent threat – 'Where's the rest of the money, or I'm gonna shoot you in the head.'" State's Response to Appellant's Application for Reconsideration page 7. The state further indicated that there was circumstantial evidence that when the threat was uttered appellant, at minimum, had the firearm on his person and ready at hand. It is a well-established point of law that circumstantial evidence has the same probative value as direct evidence. *State v. Marsh*, 7th Dist. No. 12MA40, 2013-Ohio-2949, ¶ 11, citing *State v. Jenks,* 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991). In *Helms II,* we found that the circumstantial evidence was sufficient evidence of felonious assault. *Helms II* at ¶ 30-31. There are no obvious errors with that conclusion thus it will not be reconsidered.

**{¶15}** In addition to relying on the *Washington* holding and its belief that the evidence does support merger of the felonious assault and attempted murder convictions to support its conclusion that reconsideration should be granted, the dissent once again asserts appellant's due process rights were violated by our decision in *Helms II.* The basis of alleged due process rights violation is that our decision that those offenses do not merge was based on our own findings from an independent review of the record as opposed to arguments presented by the state. This due process argument was raised by the dissent in *Helms II* and addressed by the majority opinion. *Helms II* at ¶ 32 (addressing dissents position that there is a due process violation). Since that reasoning was already addressed and considered, it does not provide a basis for reconsideration.

DeGenaro, P.J., dissents.

**{¶16}** Pursuant to the recent Ohio Supreme Court decision in *State v. Washington,* Slip Opinion No. 2013-Ohio-4982 (Nov. 14, 2013) and for the reasons articulated more thoroughly in the majority opinion in *State v. Helms*, 7th Dist. No. 08 MA 199, 2010-Ohio-4872, ¶36-73 (*Helms I*), and the minority opinion in *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶95-117 (DeGenaro, J. concurring in part and dissenting in part) (*Helms II*), as well as those additionally discussed here, Appellant's motion for reconsideration should be granted. The majority analysis in *Helms II* is erroneous, especially in light of *Washington*. The record at trial and at sentencing demonstrates that the State relied upon the same conduct to prove the two offenses, and that the offenses were neither committed separately nor with a separate animus. Thus, Appellant is afforded the protections of R.C. 2941.25 and the attempted murder and felonious assault convictions must merge for sentencing purposes. Accordingly, I would grant reconsideration, affirm Helms' convictions, vacate his sentence, and remand to the trial court for resentencing where the State would elect which offense to pursue pursuant to *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶20-22.

**{¶17}** As a threshold matter, it is important to place *Helms II* in its proper context. The character of the Ohio Supreme Court's decision to remand *Helms I* was procedural, not on the merits. Both parties appealed *Helms I,* and through sheer happenstance the case was pending appeal to the Ohio Supreme Court when the Court released *Johnson*. Accordingly, the Court ruled: "The portion of the judgment of the court of appeals addressing appellant's first assignment of error below is vacated on the authority of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and the cause is remanded to the court of appeals for application of our decision in *State v. Johnson*." *State v. Helms*, 128 Ohio St.3d 352, 2011-Ohio-738, 944 N.E.2d 233, ¶3.

**{¶18}** The Ohio Supreme Court did not review the substance of our decision in *Helms I* or determine whether we had correctly resolved the merger issue. *Helms I* was treated similarly to appeals which were pending when *State v. Foster,* 109 Ohio

St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 was released. *Compare In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174 (remanding for application of *Foster*), with *State v. McClendon*, 128 Ohio St.3d 354, 2011-Ohio-954, 944 N.E.2d 235 (summarily vacating portion of the judgment of the court of appeals addressing merger on the authority of *Johnson*, and remanding to the court of appeals for application of *Johnson*); *State v. Stall*, 128 Ohio St.3d 501, 2011-Ohio-1960, 946 N.E.2d 756 (same); *State v. Brenson*, 128 Ohio St.3d 396, 944 N.E.2d 1172, 2011-Ohio-1425 (same); *State v. Cherif*, 128 Ohio St.3d 356, 2011-Ohio-956, 944 N.E.2d 236 (same); *State v. Humphrey*, 128 Ohio St.3d 397, 2011-Ohio-1426, 944 N.E.2d 1172 (same).

**{¶19}** And although the case was remanded for this court to apply the "new" *Johnson* analysis; as a practical matter the majority in *Helms I* had applied the same conduct-based merger analysis adopted by the Court in *Johnson* when it determined the attempted murder and felonious assault convictions must merge. *Helms II* at ¶61 (DeGenaro, J. concurring in part and dissenting in part). In fact, during oral argument in *Helms II*, "both counsel conceded that given the conduct-based merger analysis applied by this court in *Helms I, Johnson* [did] not have a legal effect upon the analysis on remand." *Helms II* at ¶51 (DeGenaro, J. concurring in part and dissenting in part).

**{¶20}** However, the majority in *Helms II* erroneously agreed with the State's contention that the remand provided an opportunity for the court to completely re-evaluate its decision in *Helms I.* Thus, the State got a proverbial "second bite at the apple" and was able to persuade a panel member to change their mind and adopt a theory posited for the first time by the dissent in *Helms I.* As a result, the dissent's analysis in *Helms I* was reborn as the majority in *Helms II*.

**{¶21}** Notwithstanding the de novo standard of review that continues to remain in effect for merger decisions, *see State v. Williams* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245,[1] it was improper for this court to use the *Johnson*

---

[1] As an aside, there was no reason to withhold resolution of this reconsideration motion—which was fully briefed in April, 2012—until *Williams* was decided in December, 2012, especially considering no

remand as an opportunity to completely reconsider the merits of this case since, as a practical matter, this court had already applied a proper conduct-based merger analysis in *Helms I*. The merger issue was resolved in *Helms I* by comparing the elements of attempted murder and felonious assault based upon the facts in the case, rather than in the abstract. *Helms I* at ¶51-53. This part of the merger analysis remained unchanged by *Johnson*. *Washington* at ¶9 ("We hold that while *Johnson* abandoned a portion of the test for determining whether offenses share a 'similar import,' it did not change the test for determining whether those offenses resulted from the 'same conduct.' ").

**{¶22}** Thus, despite the fact that the *Helms I* merger analysis was vacated and remanded to "apply *Johnson*" the principle of law of the case should have dictated that the merger decision in *Helms I* be reaffirmed, and the majority's conclusion to the contrary in *Helms II* was therefore erroneous.

**{¶23}** As explained in the minority opinion in *Helms II*, the cases upon which the majority relied in support of its argument that Helms' subsequent threat constitutes a distinct felonious assault are not only distinguishable, but misinterpreted by the majority:

> In *State v. Green,* 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), the Ohio Supreme Court held: "*The act of pointing a deadly weapon at another coupled with a threat,* which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2). (*State v. Brooks,* 44 Ohio St.3d 185, 542 N.E.2d 636 [1989], syllabus, explained and followed.)" *Id.* at syllabus. In *Green,* the defendant held a rifle aimed at a police officer's head, and at the instant he positioned his weapon in

notice was given to the parties of this court's intent to do so. Having remained pending, after *Williams,* the State filed supplemental authority in March, 2013 notifying this court that *Washington* was before the Ohio Supreme Court; now it is fortuitous for Appellant that his reconsideration motion was still pending when *Washington* was released.

the direction of the officers, shouted, "If you don't have a warrant get the f*ck out of my house." The Ohio Supreme Court held that under those facts there was sufficient evidence of a felonious assault. *Green* at 241, 569 N.E.2d 1038.

In *Brooks,* the Court reached the same conclusion where the defendant pointed a handgun at a woman's face during an argument and stated that he would kill her. *Brooks* at 187, 542 N.E.2d 636. Similarly, in *State v. Battle,* 5th Dist. No. 09 AP 0001, 2010–Ohio–4327, the Fifth District concluded there was sufficient evidence supporting a felonious assault conviction where the deputy testified that the defendant pointed a gun about two feet from the deputy's face and yelled "get out of my house." *Id.* at ¶ 99.

The present case is factually distinguishable from *Brooks, Green* and *Battle.* In all three cases the pointing of a firearm at the victim occurred *contemporaneously* with the defendant's threat, not a few minutes before the threat was uttered. Here, as conceded by the majority at ¶ 35, the State failed to provide any evidence that Helms used the firearm contemporaneously with uttering his threat. These facts are insufficient to establish felonious assault. The State failed to meet its burden of proving that Helms had the criminal intent to physically harm Kaluza with his firearm, and that Helms' conduct constituted a substantial step in carrying out that intent. R.C. 2923.02; *State v. Group,* 98 Ohio St.3d 248, 2002–Ohio–7247, 781 N.E.2d 980, ¶ 95; *Green* at 240–241, 569 N.E.2d 1038.

*Helms II* at ¶106-108 (DeGenaro, J. concurring in part and dissenting in part).

**{¶24}** However, this reconsideration motion must now be viewed through the analytical prism set forth by the Ohio Supreme Court recently in *Washington.* The confusion regarding the merger analysis created by the *Johnson* plurality opinions was clarified in *Washington,* which holds in the syllabus:

When deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus.

**{¶25}** The Court elaborated:

Nothing in Ohio's felony-sentencing statutes prohibits the litigation of merger at sentencing. To the contrary, R.C. 2929.19(B)(1) states that the trial court "shall consider * * * *any* information presented" by the defense or the prosecution at the sentencing hearing. (Emphasis added.) Further, R.C. 2929.19(A) allows the state and the defendant to "present information relevant to the imposition of sentence in the case." On appeal from a felony sentence, the reviewing court "shall review the record," R.C. 2953.08(G)(2), which includes more than the evidence and arguments presented at trial. R.C. 2953.08(F)(3) provides that the record to be reviewed shall include "[a]ny oral or written statements made to or by the court at the sentencing hearing." *See also* App.R. 9(A) (defining what constitutes the "record on appeal in all cases").

*Washington* at ¶20.

**{¶26}** Pursuant to *Washington,* in order to properly resolve Appellant's reconsideration motion, we must not only review and consider the trial court record which includes evidence regarding Appellant's conduct, but additionally *the parties' arguments made during trial and during sentencing. Id.* at ¶20; *see also Johnson* at ¶70 (O'Connor, J., concurring in judgment) ("we are constrained by the record before us and the legal arguments raised in the briefs."); *Helms II* at ¶103 (DeGenaro, J. concurring in part and dissenting in part).

**{¶27}** At trial, the evidence regarding Appellant's conduct is that "Helms first shot Kaluza in the neck, immediately paralyzing him. Helms then walked away from Kaluza, spoke briefly with Gilbert, returned to Kaluza's car, briefly 'fumbled around' in the car, and moved the car from the busier street to the residential street * * * approximately 300 feet. After the car had been moved, Helms continued to search in the car, and threatened to shoot Kaluza a second time. Helms ran away with the deposit bag once tow trucks arrived at the scene." *Helms I* at ¶39. During opening statements, the State argued that Helms attempted to murder the victim during a robbery and kidnapping at gunpoint, shooting Kaluza "at point blank range, one round, through his neck, causing instant paralysis," arguing these facts were the basis for the attempted murder and felonious assault charges. (Trial Tr., pp. 1546-1548, 1552). In its closing statement, the State argued:

> I want to touch briefly, ladies and gentlemen, on the elements of the charges. The first charge, attempted murder. Defendant, Taran Helms * * * purposely attempted to cause the death of Joseph Kaluza * * *.
>
> You take a gun with a live round, and you walk next to someone's car and in point blank range you shoot that round into his neck, is there any question in your mind what the intent is? You've got to eliminate the only witness. That witness that could place you there; the witness that's already seen your accomplice. You've got to eliminate him. And he thought he did when he kept walking across – never broke his stride, remember that.
> * * *
>
> Felonious assault. Defendants Taran Helms and Hattie Gilbert knowingly caused or attempted to cause physical harm to Joseph Kaluza by means of a deadly weapon. Again, we know that a gun was used. We know that it was shot that caused his injury, that caused

instant paralysis, and we know that that gun was found near the crime scene.

Physical harm? He's in a wheelchair. He's paralyzed from the neck down by means of a deadly weapon. It's a gun, ladies and gentlemen. It's used to kill.

(Trial Tr., pp. 2220-2221)

{¶28} Finally, at the sentencing hearing, the State made no specific argument regarding merger. The prosecutor stated he "wasn't going to go into the facts and the evidence" merely making a boilerplate statement that the charges are not allied offenses of similar import; failing even to make a minimal argument regarding separate animus, other than for the gun specifications. (Sent. Tr., pp. 2-3). Conversely, Appellant filed a brief with respect to merger, and at the sentencing hearing defense counsel argued:

In particular, the felonious and attempted murder counts, I think if you – I sort of ran through the history of how the Ohio Supreme Court has dealt with that issue. I think they have come back to where they were in the Logan case. And I think if you look at the quotations from some of the appellate courts that were struggling with the application under Rance, I think it's pretty clear when there is, as there is here, one assault, one shooting, there can be only one sentence as between those two offenses.

(Sent. Tr., pp. 8-9)

{¶29} Pursuant to *Washington,* a review of the *entire record before the trial court* supports merger of the attempted murder and felonious assault convictions here. The State's theory of the case at trial was that the single gunshot satisfied the elements for both convictions. That apparently was the State's theory at sentencing, because the prosecutor told the trial court, in effect, that he was standing on the

evidence presented and arguments made during trial for sentencing purposes. Nor did the prosecutor respond to or rebut defense counsel's merger argument.

**{¶30}** Importantly, Appellant has met his burden of proof that he is entitled to have the attempted murder and felonious assault convictions merge, as outlined in *Washington*. Defense counsel articulated factual and legal arguments demonstrating that the State relied upon the same conduct to prove both offenses: a single gunshot paralyzed the victim, almost proving to be fatal. *See Washington* at ¶18.

**{¶31}** This conclusion is buttressed by two significant concessions made by the State on reconsideration, and during the merit determination of *Helms II*: 1) that Appellant fired a single shot which permanently wounded the victim; and, 2) that there is no evidence in the record that Appellant pointed the gun at the victim while uttering the threat. Although the State argues that at a minimum Appellant had the weapon on his person and ready at hand, this is insufficient to prove felonious assault under Ohio law as quoted above from the minority opinion in *Helms II*.

**{¶32}** Rationales or theories set forth in *any* appellate decision, majority or minority, are not a part of "the record" of a case for merger evaluation purposes. The scope of the record for merger review purposes has been defined by the Court in *Washington* to consist of: the evidence admitted at trial, the parties' arguments or case theory at trial, and the parties' arguments at the sentencing hearing. *Id.* at ¶20. A court of appeals is not a court of record. *See Witkowski v. Arditi*, 123 Ohio App.3d 26, 28, 702 N.E.2d 1231 (7th Dist.1997) ("The court of appeals is a court of review that bases its decisions upon a review of the record below."); *Burley v. Bibbo*, 135 Ohio App.3d 527, 529, 734 N.E.2d 880 (7th Dist.1999) ("This court does not serve as a factfinding body. Only the lower court may serve as a factfinder.") Anything not made a part of the record in the trial court cannot be considered on appeal. *See, e.g., State v. Coleman*, 85 Ohio St.3d 129, 133-134, 707 N.E.2d 476; *see also* App.R. 9. Merger is a sentencing issue; the burden of proof lies not with the State but with the defendant. *Washington* at ¶18. That being said, it is not the role of the appellate court to rebut the defendant's merger argument with a novel argument never made by the State.

**{¶33}** Further, Appellant correctly argues that the decision in *Helms II* subjects him to double jeopardy, and denies him his rights to a jury trial and to due process, all as guaranteed under the Ohio and United States Constitutions. I am particularly concerned about the due process implications of the novel "second felonious assault" theory created by the dissent in *Helms I* and then adopted by the court in *Helms II*, namely, that Helms' subsequent threat towards the victim after he shot him and pushed the car (around the corner approximately 300 feet) to a side street, constitutes a separate act of felonious assault that does not merge with the attempted murder. *Helms II* at ¶46-47.

**{¶34}** Appellant is correct that he never had an opportunity to confront or defend this theory. Facts to support this "second felonious assault" offense were not presented to the jury during the guilt phase, during opening and closing statements by the State, or to the trial court during the sentencing phase. As the United States Supreme Court noted in *Carne v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id.* (internal citation omitted). In raising this new theory well after the trial had ended, the *Helms II* majority has thwarted Appellant's ability to effectively defend himself. The State's sole theory of the case at trial with respect to these two charges was that Helms committed attempted murder by shooting the victim at point-blank range, and that Helms committed felonious assault by injuring the victim with that same shot. *Helms II* at ¶98 (DeGenaro, J. concurring in part and dissenting in part). The State maintained this theory at sentencing, and on appeal in *Helms I,* never arguing that some separate, subsequent conduct by Helms constituted the felonious assault.

**{¶35}** The majority's use of a novel theory on appeal offends principles of due process as described by the Sixth Circuit in *Stumpf v. Robinson*, 722 F.3d 739, 748 (6th Cir.2013) (en banc) and is instructive here:

> As applied to a criminal trial, denial of due process is the failure to
> observe that fundamental fairness essential to the very concept of

justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941).[8] "In the field of criminal law, [the Supreme Court has] defined the category of infractions that violate 'fundamental fairness' very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (internal quotation marks and alterations omitted). Thus, state action "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson v. New York*, 432 U.S. 197, 201–02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Cardozo, J.)); *see also Medina*, 505 U.S. at 443, 112 S.Ct. 2572.

*Stumpf*, at 748.

{¶36} In a footnote, the Sixth District further noted:

There are two species of due-process claims in criminal cases. State action that "shocks the conscience" violates the Due Process Clause's substantive component. *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (Frankfurter, J.). State action that deprives a defendant of a fundamentally fair trial violates the Due Process Clause's procedural component. *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (internal quotation marks and alterations omitted).

*Id.* at 748, fn. 8.

{¶37} Here, the majority's decision in *Helms II* and its refusal to grant reconsideration violates Appellant's right to procedural due process as contemplated in *Stumpf.* Refusing to merge the attempted murder and felonious assault convictions based upon a post-trial theory first formulated in a dissent, and later transformed into a majority opinion due to procedural happenstance, violates due process. Further, pursuant to the merger analysis in *Washington* recently articulated by the Ohio Supreme Court, the attempted murder and felonious assault convictions must merge for sentencing in this case, because they arose from a single transaction and have a single animus; despite the majority's factual contortions. The facts supporting these two convictions are that Appellant paralyzed the victim with a single shot. Accordingly, I would grant reconsideration.