[Cite as *State v. Glenn*, 2026-Ohio-1062.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. CT2025-0093 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2025-0373 |
| MICHAEL H. GLENN, | Judgment: Affirmed in Part, Reversed in Part |
| Defendant - Appellant | Date of Judgment Entry: March 25, 2026 |

**BEFORE:** Robert G. Montgomery; Kevin W. Popham; David M. Gormley, Judges

**APPEARANCES:** JOSEPH A. PALMER, for Plaintiff-Appellee; APRIL F. CAMPBELL, for Defendant-Appellant.

*Montgomery, J.*

{¶1} Defendant-Appellant, Michael Glenn, appeals from the decision of the Muskingum County Court of Common Pleas sentencing him to an aggregate term of sixty months in prison. For the reasons below, we AFFIRM in Part and REVERSE in Part.

**<u>STATEMENT OF FACTS</u>**

{¶2} Defendant-Appellant, Michael Glenn ("Appellant"), was previously incarcerated for an aggravated robbery conviction out of Muskingum County. On February 6, 2024, at the conclusion of his prison term, he was placed on post-release control for a period of five years. On February 7, 2024, Appellant reviewed and signed his standard conditions of APA supervision.

{¶3} On May 6, 2025, Appellant was released from the Zanesville City Jail and transported to Cairn Recovery Services, a residential treatment program. He was verbally instructed to complete the program and was advised that his supervising officer would meet with him the following week to place him on electronic monitoring. However, on May 10, 2025, Appellant absconded the Cairn Recovery program without staff permission or APA authority. On May 13, 2025, Appellant's parole officer attempted to contact him at various numbers but did not reach him. Appellant was declared a violator at large.[1]

{¶4} On May 23, 2025, around 11:25 a.m., a patrolling Zanesville police officer observed a vehicle leaving a known drug house on Nancy Avenue in Zanesville. The officer followed the car, and then conducted a traffic stop after the vehicle ran a stop sign. Officers later discovered that Appellant, a front seat passenger in the car, had an outstanding warrant for escape. Appellant attempted to flee the scene and ran through yards and jumped a wall. The officers and a K-9 unit chased Appellant, and an officer eventually took him down to the ground.

{¶5} During his apprehension, Appellant informed officers that he had a pistol on his person inside his hoodie pocket. Appellant's prior conviction for aggravated robbery made him ineligible to possess a firearm. Officers searched Appellant and found a Crown Royal bag in his hoodie pocket containing a black Smith & Wesson 9mm handgun, a hypodermic syringe, and digital scales. The pistol had three rounds in the magazine, and it was later determined to be operable. The K-9 also discovered ammunition in the vehicle.[2]

---

[1] These facts relate solely to the escape charge, case number CR2025-0373 ("373").

[2] These facts are related solely to the additional charges (not the escape charge), in case number CR2025-0416 ("416").

**{¶6}**    Appellant was charged with multiple counts,[3] initially pled not guilty, but later agreed to change his plea pursuant to a plea agreement with the State.  Appellant agreed to plead guilty to one count of escape in case 373, a fourth-degree felony, and in case 416, he pled guilty to four counts – one count of having a weapon while under disability, one count of carrying a concealed weapon, one count of improper handling of a firearm, and one count of obstructing official business with a firearm specification.  The State agreed to dismiss the remaining counts and proceed on only one firearm specification rather than multiple firearm specifications.  The parties jointly recommended an aggregate sentence of sixty months' incarceration for both cases.  There was no agreement regarding post-release control.

**{¶7}**    Thereafter, the Court imposed the agreed-upon aggregate 60-month prison sentence, as was jointly recommended by both parties.  The Court issued two separate Judgment Entries, one for case 373 and one for case 416.  In both Entries, the trial court imposed: (1) the remaining post-release control time from the previous aggravated robbery conviction (CR2014-0083) to run consecutively to the sentence imposed in the respective Entry; and (2) post-release control upon the conclusion of the sentence imposed in the respective Entry.  Appellant timely appealed and asserts two assignments of error.

---

[3] A Muskingum County Grand Jury indicted Appellant for fourth-degree felony escape in Case No. CR2025-0373. In Case No. CR2025-0416, the grand jury indicted Appellant with two counts of third-degree felony weapons while under disability, fourth-degree felony carrying a concealed weapon, fourth degree felony improper handling of a firearm in a motor vehicle, fifth-degree felony obstruction of official business, and first-degree misdemeanor falsification. Each of those offenses, except the misdemeanor, contained a one-year firearm specification.

## ASSIGNMENTS OF ERROR

{¶8} "I.     APPELLANT'S GUN OFFENSES, COUNT ONE (HAVING A WEAPON WHILE UNDER DISABILITY), COUNT THREE (CARRYING A CONCEALED WEAPON), AND COUNT FOUR (IMPROPER HANDLING OF FIREARMS IN A MOTOR VEHICLE), MERGED."

{¶9} "II.     GLENN'S SENTENCE WAS CONTRARY TO LAW: THE TRIAL COURT WAS REQUIRED TO DETERMINE AND IMPOSE THE EXACT AMOUNT OF TIME OF GLENN'S POST-RELEASE CONTROL, BUT IT DID NOT. AND GLENN'S POST-RELEASE CONTROL SANCTION COULD BE IMPOSED ONLY ON ONE CASE, NOT BOTH."

## ANALYSIS

### *Merger of Gun Offenses – Plain Error*

{¶10} In the first assignment of error, Appellant claims the trial court erred in failing to discuss merger of offenses and claims his gun offenses should have merged. We disagree.

{¶11} Initially, we note that an allied-offenses claim is consistent with an admission of guilt and therefore is not necessarily waived by pleading guilty to offenses that might be allied offenses of similar import. *State v. Rogers*, 2015-Ohio-2459, ¶ 19; *State v. Folk*, 2020-Ohio-4373, ¶ 22.  However, because Appellant failed to raise this argument before the trial court, Appellant forfeited the right to assert such argument on appeal for sentencing purposes unless he demonstrates plain error. *Rogers*, supra; *State v. Black*, 2016-Ohio-383.  In *Rogers*, the Court stated:

An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable

probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; and, absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Id.*, at 387.

**{¶12}** The Ohio Supreme Court has stressed that "[t]he elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *State v. Bailey,* 2024-Ohio-4407, ¶ 9, citing *Barnes*, at 27. Said elements include: (1) an error; (2) the error is obvious; and (3) a reasonable probability exists that the error caused prejudice and affected the outcome of the proceeding. *Id.*, at ¶ 8, 10, and 14, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Thus, to demonstrate plain error, Appellant must demonstrate that the gun offenses are allied offenses of similar import. In turn, R.C. 2941.25, Ohio's allied-offense statute, provides:

(A)    Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)    Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶13} In *Ruff*, the Ohio Supreme Court clarified that the defendant's conduct is important and must be examined in addition to the animus and the import. *State v. Ruff*, 2015-Ohio-995, syllabus; *State v. Ryan*, 2012-Ohio-1265, ¶ 48. The Court held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors - the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of **all** the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. (emphasis added).

*Ruff*, syllabus.

{¶14} Here, it is well-settled that the offenses of carrying a concealed weapon ("CCW") and improper handling of a firearm are committed by different conduct and are not allied offenses. *State v. Sawyer*, 2020 Ohio App. LEXIS 1366; *State v. Walker*, 2010-Ohio-2125, ¶¶ 19-21. Each offense can be committed without committing the other. *Id.* A CCW conviction does not require the firearm to be loaded, while improper handling of a firearm in a vehicle ("improper handling") conviction does require that the firearm be loaded. *Id.* Improper handling addresses transport or possession while in a motor

vehicle, but motor vehicles are not necessarily a part of a CCW conviction. *Id*; *State v. Philpott*, 2020-Ohio-5267, ¶ 83 (holding that the offense of carrying a concealed weapon does not merge with offense of improper handling of firearms in a motor vehicle); *Sawyer*, at \*6. Because each offense may be committed without committing the other, the offenses are not allied offenses of similar import.

{¶15} Turning to whether the offense of having a weapon while under disability merges with CCW, we conclude the offenses do not merge under the facts of this case. In *Rice*, the Ohio Supreme Court held that these two offenses are not allied offenses of similar import because each offense may be committed separately and/or with a separate animus. *State v. Rice*, 69 Ohio St.2d 422 (1982); *State v. Lyons*, 2017-Ohio-4385, ¶ 39 (7th Dist.) (defendant's conduct of acquiring the firearm and concealing it in his waistband resulted in two different offenses that were committed separately and with a separate animus); *Ryan*, supra, at ¶ 53 (the offense of having a weapon while under a disability occurred when appellant purchased the weapon, well before he encountered the officer; appellant later concealed the gun from the officer's view and this is when the carrying a concealed weapon offense took place such that the offenses did not merge).

{¶16} The intent, or animus, necessary to commit the crime of CCW, "is to carry or conceal on the person or ready at hand, a deadly weapon or dangerous ordinance. The gist of the offense is concealment. The gravamen of the offense of having a weapon while under disability is to 'knowingly acquire, have, carry, or use' a weapon while under legal disability." *Rice*, at 427; *Lyons*, at ¶ 40. There is a different mental state required for both. *Rice,* at 427. Here, Appellant, a person under disability, acquired a handgun sometime before concealing it on his person. Thus, the elements of proof for having a weapon while under disability were satisfied when Appellant acquired the firearm. His

subsequent conduct of concealing the handgun constituted a separate and distinct act from initially acquiring the weapon. See *Lyons*, supra; *State v. Young*, 2011-Ohio-747, ¶ 49 (2d Dist.).

{¶17} Similarly, having a weapon while under legal disability is completely dissimilar from improper handling. As set forth, having a weapon under legal disability is knowingly acquiring or having a weapon when the individual is not permitted to have one, while improper handling requires that the gun be transported in a motor vehicle and requires that the firearm be loaded. The elements of each offense are distinct. Because Appellant cannot establish that the gun offenses are allied offenses of similar import, said offenses do not merge for purposes of sentencing.

{¶18} Moreover, the parties jointly agreed on a recommended sentence prior to Appellant's guilty pleas. Generally, a jointly recommended sentence is not subject to review on appeal pursuant to R.C. 2953.08(D)(1).[4] *State v. Sergent*, 2016-Ohio-2696. Here, because we conclude that Appellant's gun offenses are not allied offenses of similar import subject to merger, and the aggregate sentence is well within the statutory guidelines for the offenses, the jointly recommended sentence is authorized by law and not subject to review on appeal. Accordingly, we find no plain error. **Appellant's first assignment of error is overruled.**

---

[4] R.C. 2953.08(D)(1) states: "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." If all three conditions are met, the defendant may not appeal the sentence. *State v. Underwood*, 2010-Ohio-1, ¶¶ 19-21.

### *Post-Release Control Sanctions*

**{¶19}** In the second assignment of error, Appellant argues (1) the trial court was required to determine the exact amount of time of Appellant's post-release control sanction, and did not; and (2) the trial court was authorized to impose additional prison time as a post-release-control sanction for only one case, not both cases, as reflected in the two separate Judgment Entries.

**{¶20}** Regarding the first argument, the sentencing transcript and corresponding Entry reveals that the Court terminated Appellant's post-release control, finding him no longer amenable. The Court imposed a prison term equal in length to the number of days still remaining on Appellant's post-release control period in his aggravated robbery case, stating: "It's believed to be over a thousand days." *Sent. Tr.*, at p. 23. The Court did not calculate or indicate the exact amount of time Appellant was to serve. The State concurs with Appellant that the trial court should calculate the exact amount of time remaining to be served for post-release control related to Appellant's aggravated robbery conviction.

**{¶21}** Appellant's second argument likewise has merit. Under R.C. 2929.141, the trial court is authorized to terminate a defendant's post-release control and impose a prison term up to the amount remaining on his post-release control or 12 months in prison, whichever was greater, as a penalty for the defendant's violations. *State v. Evilsizor,* 2018-Ohio-3599, ¶ 16 (2d Dist.). Thus, Appellant argues the statute's "plain language" authorizes the imposition of just one prison term as a post-release-control sanction because he was on post-release-control supervision in just one case. Again, the State concedes and agrees that remand is necessary for the trial court to impose a single prison term in just one of Appellant's cases as a sanction for his commission of a new felony offense while he was under post-release-control supervision for a prior felony

conviction. As such, we reverse and remand to the trial court for a new sentencing hearing consistent with this Opinion.

## CONCLUSION

**{¶22}** Appellant's first assignment of error is overruled. Appellant's second assignment of error is sustained, and the matter is reversed and remanded to the trial court for proceedings consistent with this Opinion. The trial court shall conduct a new sentencing hearing.

**{¶23}** For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is Affirmed in Part and Reversed in Part.

**{¶24}** Costs to Appellant.

By: Montgomery, P.J.

Popham, J. and

Gormley, J. concur.