[Cite as *State v. Lyons*, 2017-Ohio-4385.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 16 JE 0008 |
| VS. | ) | |
| | ) | OPINION |
| COREY LYONS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the Court of
Common Pleas of Jefferson County,
Ohio
Case No. 15 CR 18

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiff-Appellee    Attorney Jane Hanlin
Jefferson County Prosecutor
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant    Attorney April Campbell
545 Metro Place South, Suite 100
Dublin, Ohio 43017

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: June 15, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Corey Lyons, appeals the trial court's judgment convicting him of multiple offenses and sentencing him accordingly. Lyons alleges error during voir dire, challenges his tampering with evidence conviction, his sentence, and the effectiveness of trial counsel. As Lyon's arguments are meritless, the judgment of the trial court is affirmed.

{¶2} Captain John Lemal of the Steubenville Police Department was on late night patrol when he witnessed a fight occurring at Club 106 and called for assistance. When he exited his vehicle, Lemal noted that several people were pushing and screaming. He advised the two groups to separate. About half of the group went back inside the bar; however, three to four females and Lyons began walking north in the parking lot of Club 106.

{¶3} Lemal heard a metallic sound as something hit the gravel, at which point Lemal could see it was a Smith and Wesson firearm. Officer Nate Cline arrived on the scene and Lemal pointed out the weapon to Cline, and ordered everyone to immediately stop. Lyons did not stop; he began to walk faster. Lemal observed Lyons reach into the right side of his coat or pants prompting Lemal to draw his own weapon and pursue Lyons. Lyons removed a .40 Ruger and threw it near a vehicle parked outside the club. The Ruger was loaded and had one round in the chamber. Thereafter, Lyons fled and officers were unable to locate him.

{¶4} The grand jury indicted Lyons for having a weapon while under disability, tampering with evidence, carrying a concealed weapon and failure to comply with the order of a police officer. The matter proceeded to trial and the parties stipulated that Lyons was subject to a weapons disability and not permitted to have a weapon for any reason.

{¶5} Lyons was convicted of all charges, and sentenced to three years for having a weapon as a convicted felon, two years for tampering with evidence, eighteen months for carrying a concealed weapon, all to be served consecutively. Lyons was sentenced to six months for his misdemeanor failure to comply conviction to be served concurrently with his felony sentences.

**Indoctrination**

**{¶6}**   In his first of six assignments of error, Lyons asserts:

Lyons' convictions should be reversed because the prosecutor indoctrinated the jury in voir dire, substantially affecting Lyons' right to a fair trial.

**{¶7}**   Lyons argues that the State provided overly detailed facts about the case during voir dire which prejudiced him. The State responds that voir dire was appropriate and stated basic facts that constituted the charged offenses which were confirmed by witnesses testifying during its case in chief.

**{¶8}**   Counsel for Lyons did not object to any statements made by the State during voir dire, instead indicating the defense was satisfied with the seated jury. As such, Lyons has waived all but plain error. Plain error is obvious and but for the error, the outcome of the trial clearly would have been otherwise. *State v. Johnson*, 7th Dist. No. 12 MA 137, 2014-Ohio-4253, ¶ 58.

**{¶9}**   Lyons relies upon *State v. Clark*, 981 S.W.2d 143, 146-147 (Mo.1998), for the proposition that explicit factual detail during voir dire is impermissible, but cites no Ohio case adopting this position. Lyons also relies on *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, but the Ohio Supreme Court's holding in that case is contrary to Lyons' argument:

"While it is improper for counsel to seek a commitment from prospective jurors on whether they would find specific evidence mitigating, *State v. Bedford*, 39 Ohio St.3d at 129, 529 N.E.2d 913, counsel should be permitted to present uncontested facts to the venire directed at revealing prospective jurors' biases. *Turner v. Murray* (1986), 476 U.S. 28, 36–37, 106 S.Ct. 1683, 90 L.Ed.2d 27.

*Jackson*, ¶ 52.

**{¶10}**   The State presented uncontested facts to the venire about the crimes,

which were confirmed by witnesses during its case in chief. As Lyons did not establish any error, let alone plain error, this assignment of error is meritless.

**Batson**

{¶11} In his second of six assignments of error, Lyons asserts:

The prosecutor's reason to preemptively strike the only black juror from the jury was race central, not race neutral under *Batson*, and the prosecutor's additional reason to exercise her preemptory strike was a pretext for unconstitutional discrimination.

{¶12} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror based upon race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges unconstitutionally; first, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96–97. Second, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97–98. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98. An appellate court will not reverse the trial court's decision there was no discrimination unless it is clearly erroneous. See *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶13} Lyons satisfied the first element of a prima facie case; counsel objected after the prospective juror—who was the only African-American—was dismissed. Consequently, the burden shifted to the prosecutor to articulate a race-neutral explanation for striking the juror in question. The State responded:

All right. There are a couple things. We have -- the State has concerns about two jurors who have had family members prosecuted by

prosecutors in Jefferson County, one is Mr. [J], the other is Mr. [R] that's in the first row. We haven't yet gotten to any of the preempts but it's the same concern about each of those potential jurors. The only one of the two of them that's the same concern about that both of them, only one of them is African-American. So, there was some additional questioning by myself and [defense counsel] about that.

Mr. [J] lives on Spring Avenue, which is in downtown Steubenville. He is the only African-American on the panel and his facial expressions and his answers were a little bit different when I asked "Would you feel pressure to acquit him or would you be scared if you voted guilty in this case?" And so he's -- he's answering one way but certainly he -- he paused and he grimaced about the idea that it is difficult quite frankly for people that live in the downtown area or the hilltops, particularly when they're African-American, to vote.

On top of that and I know there was some leading questions when [defense counsel] had a chance to explain to him that he would be guided by the spirit, that he would be in prayer during the witnesses and during the deliberations and that he would be meditating.

And I think the combination of the family members with prior convictions in Jefferson County prosecuted by Jefferson County, the location, his reaction to being asked about having to either acquit or find another African-American guilty, combined with his reliance on the spirit and meditation during the trial and during the deliberations are enough for there to be a race neutral reason to excuse that juror.

I will tell [defense counsel] I will likely excuse Mr. [R] for one of the same reasons, that it seems to be painful for him that he had a stepson who's now dead who's been prosecuted numerous times by people in

this county.

**{¶14}** Lyons argues that the reasons given by the prosecutor were not race-neutral. The State responds that Lyons actually brought up the issue of race first during voir dire. After he did, she followed up with questioning. It was at that time that prospective Juror J disclosed that when he gets into a serious situation that he lets "the spirit tell me what to do" and that "it would be the same" in terms of jury deliberations.

**{¶15}** It is not a heavy burden for the State to articulate a racially-neutral reason for using a peremptory strike. The State gave multiple, neutral reasons for using a peremptory challenge against prospective Juror J: he would be guided by the spirit and meditating during trial and deliberations; he had a child that was prosecuted in Jefferson County; and because his verbal answers did not match his facial expressions when issues of race were discussed. Finally, prospective Juror R, who is white, also had a family member prosecuted and was also excused by a peremptory strike.

**{¶16}** The third *Batson* element provides the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Here, the trial judge answered in the negative:

> And he made me nervous when he was going to have some spirit telling him what to do in the jury room because the spirit isn't going to testify and the spirit is not the law from the Court and I don't care what color the spirit is, that's not what his verdict should be based on and I don't know that that's a challenge for cause but it's certainly a basis for a peremptory challenge.
>
> And then if he's got all these relatives who were prosecuted by Jefferson County prosecutors, you know, I think that's an issue too. I think a white juror who stood up there and said "I'm going to have the

Jury – I'm going to have some – I'm going to talk to some spirit and he's going to tell me what to do and – and yeah, all my relatives have been prosecuted by prosecutors in this county" (sic) and she wanted – you know, I would preempt him if I was her.

And so I'm going to allow it…

{¶17} As the reasoning offered by the State was race-neutral, the trial court did not err in granting the peremptory challenge. Accordingly, Lyons' second assignment of error is meritless.

## Tampering with Evidence

{¶18} For clarity of analysis the remaining assignments of error will be discussed out of order. In his fifth of six assignments of error, Lyons asserts:

Lyons tampering with evidence should be reversed as a matter of law under *Straley*.

{¶19} A sufficiency challenge measures whether there is sufficient evidence to send the case to the jury or support a verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In essence, sufficiency is a test of adequacy and whether the state met its burden of production. *State v. Fullerman*, 7th Dist. No. 99 CA 0314, 2001-Ohio-3969, *4. Whether the evidence is legally sufficient is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E. 2d 148 (1955). On appeal, the issue is whether the trier of fact could find the essential elements of the offense were proven beyond a reasonable doubt after construing the evidence in a light most favorable to the state. *State v. May*, 2011-Ohio-6637, 970 N.E.2d 1029, ¶ 58 (7th Dist.).

{¶20} Tampering with evidence is defined as "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence

in such proceeding or investigation[.]"  R.C. 2921.12(A)(1).

{¶21} Lyons relies on *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175. Straley was stopped for an alcohol related offense, but the police opted not to charge her. While making arrangements to get her a ride home, Straley ran 20 to 30 feet away to urinate, and officers discovered a cellophane baggie containing crack cocaine where Straley had urinated after she had walked away. She was convicted of tampering with evidence and the Second District reversed. The Ohio Supreme Court accepted the following certified conflict: "[w]hether a tampering conviction requires proof that the defendant impaired evidence in an investigation by tampering with evidence related to the investigation." *Id.* at ¶ 8.  The Court answered in the affirmative, concluding:

> There is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie. The baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination, and thus the record does not support a conviction for tampering with evidence.

*Id.* at ¶ 19.

{¶22} Conversely, in this case Officer Lemal arrived on the scene, witnessed the remnants of a fight, heard a firearm drop, and saw it on the ground near Lyons and others. He ordered no one to move and Lyons fled. As a convicted felon Lyons was under a prohibition from owning or possessing a firearm. When Lyons fled from Lemal, the officer saw him discard a firearm. When Lyons fled the scene and discarded the firearm he was trying to avoid a weapons under disability charge. This was a continuing series of events and an ongoing investigation of the scene. Lyons discarding the firearm impaired its potential to be used as evidence. As there is sufficient evidence to support Lyons conviction for tampering with evidence, this

assignment of error is meritless.

## Ineffective Assistance of Counsel

{¶23} In his third of six assignments of error, Lyons asserts:

Lyons' convictions should be reversed because his trial counsel was deficient at trial, with resulting prejudice.

{¶24} To prove an allegation of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E .2d 373 (1989), at paragraph two of the syllabus. To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Id.* at paragraph three of the syllabus. A properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. *State v. Hamblin*, 37 Ohio St.3d 153, 155, 524 N.E.2d 476 (1988).

{¶25} Lyons argues that his trial counsel rendered ineffective assistance in four ways: failing to challenge a racist juror; failing to exclude a juror who knew two of the State's witnesses; failing to object to other acts evidence; and failing to renew a Crim.R. 29 motion as to the tampering with evidence charge.

{¶26} Lyons contends that Juror S admitted he was racist and should have been challenged for cause. Juror S never stated he was racist; he admitted in general terms that people have biases and prejudices at times. Juror S confirmed that he had these emotions in the past, that this was unreasonable and that "you kind of check yourself after you have those thoughts."

{¶27} An ineffective-assistance claim based upon an assertion that counsel allowed the seating of a biased juror must show that the juror was actually biased against the defendant. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67. Nothing in the record establishes that Juror S was actually biased

against Lyons. As such, Lyons has failed to establish an ineffective assistance claim against his attorney related to Juror S.

**{¶28}** Lyons contends that since Juror K admitted he was a friend of two of the State's witnesses he should have been excluded from the jury. The State responds that the record demonstrates that there was nothing about these friendships that improperly prejudiced Juror K against Lyons. Juror K disclosed that he knew Sergeant Brian Bissett and Patrolman Nate Cline for about six to eight years. Juror K did not tell Bissett or Cline that he was selected for jury duty. Juror K did not discuss the case with either of them, nor did he spend much time with either of them. He stated that he would not "give them a head start or a leg up" because of his friendship with them.

**{¶29}** Lyons has failed to establish that seating Juror K constituted deficient performance of his trial counsel or resulting prejudice that would change the outcome of the trial. As such Lyons has failed to establish an ineffective assistance claim against his attorney related to Juror K.

**{¶30}** Lyons next argues that his trial counsel was deficient for permitting two instances of what he characterizes as other acts evidence: references to the first gun, a Smith and Wesson, and evidence of a pistol-whipping offense in which Lyons was named a suspect.

**{¶31}** Regarding the weapon reference, the State responds that the testimony was necessary so the jury could completely understand the sequence of events and circumstances encountered by law enforcement on the night in question. Lyons contends that the prejudice of this testimony outweighed the value. Lyons and the State both acknowledge the State never asserted that Lyons possessed the Smith and Wesson gun. Dropping that weapon is what triggered Lemal to order everyone to immediately stop. Instead, Lyons fled the scene. Accordingly, Lyons argument regarding the prejudicial nature of the testimony regarding the Smith and Wesson firearm is meritless.

**{¶32}** Lyons next argues his trial counsel was ineffective for introducing

testimony that he was a suspect in a pistol whipping offense. He contends such a deficiency cannot be sound trial strategy. Counsel's trial strategy focused on the conflicts and discrepancies of the police investigation. Raising the issue of other unresolved offenses could potentially implicate Lyons' case as one in a pattern of other lacking investigations by the police. However, debatable trial strategy rarely constitutes ineffective assistance and appellate courts will refrain from second-guessing the strategic decisions of trial counsel. *State v. Mitchell*, 2016-Ohio-1439, 62 N.E.3d 820, ¶ 102 (7th Dist.). (internal citations omitted). Accordingly, Lyons' ineffective assistance claim regarding trial strategy is meritless.

**{¶33}** Finally, as we concluded that there was sufficient evidence to convict Lyons with tampering with evidence, a claim for ineffective assistance based upon failing to file another motion to dismiss pursuant to Crim.R. 29 is moot.

**{¶34}** As Lyons has failed to demonstrate ineffective assistance of counsel, his third assignment of error is meritless.

### Merger

**{¶35}** In his sixth of six assignments of error, Lyons asserts:

Lyons' weapons under disability, tampering with evidence, and carrying concealed weapon offenses should have been merged, because Lyons received multiple convictions for the same offense.

**{¶36}** R.C. 2941.25(A) provides when the same conduct involves two or more allied offenses of similar import, the defendant may only be convicted of one offense. R.C. 2941.25(B) states when a defendant's conduct involves two or more dissimilar offenses, or when the conduct is similar but is committed separately or with a separate animus, the defendant may be convicted of all offenses. Merger is a sentencing question, not an additional burden of proof for the state at trial. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. The Supreme Court of Ohio has consistently recognized that a defendant bears the burden of establishing his entitlement to merger as codified in R.C. 2941.25. *Id.*

Merger of allied offenses presents a question of law this Court reviews de novo. *State v. Burns*, 7th Dist. No. 09–MA–193, 2012–Ohio–2698, ¶ 60.

**{¶37}** The Ohio Supreme Court recently addressed the applicable standard when determining whether offenses merge as allied offenses of similar import. *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892.

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
>
> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance?; (2) Were they committed separately?; and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30–31.

**{¶38}** Lyons argues that his convictions for having weapons under disability, tampering with evidence and carrying concealed weapons charges are allied offenses of similar import and should merge for sentencing purposes.

**{¶39}** The Eighth District has considered merger post-*Ruff* involving a weapons under disability charge in conjunction with carrying concealed weapon.

> It is possible to commit the offenses of carrying a concealed weapon and having a weapon while under disability with the same

conduct. R.C. 2923.12(A)(2), carrying concealed weapons, prohibits a person from knowingly carrying or having, concealed on the persons' person or concealed ready at hand, a handgun. R.C. 2923.13(A)(2), having weapons under disability, prohibits a person who is under indictment or has been convicted of any felony of violence, from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance. Accordingly, it is certainly possible to commit both carrying a concealed weapon and having a weapon while under disability with the same conduct. However, we must determine whether the two offenses were in fact committed with a separate animus.

In *State v. Rice,* 69 Ohio St.2d 422, 433 N.E.2d 175 (1982), syllabus, the Ohio Supreme Court held that the crimes of carrying a concealed weapons and having weapons while under disability are not allied offenses of similar import and may be committed separately and with a separate animus. Recent courts, including this court, have continued to apply the *Rice* reasoning even after the decision in *Ruff* and *Johnson* where we are to look at the defendant's conduct. This court in *State v. Street,* 8th Dist. Cuyahoga No. 102096, 2015-Ohio-2520, 2015 WL 3899393, and the Tenth District in *State v. Hobbs,* 10th Dist. Franklin No. 14AP–225, 2015-Ohio-2419, 2015 WL 3822239, held that *Ruff* does not change the rationale or validity of *Rice* and its progeny because *Ruff* still prohibits merger if the offenses are committed with separate animus. *Hobbs* at ¶ 35, citing *Ruff* at ¶31; *Street* at ¶ 15.

*State v. Carradine*, 2015-Ohio-3670, 38 N.E.3d 936, (8th Dist.), ¶ 56-57.

**{¶40}** Lyons, who was under a weapons disability, acquired a firearm. Afterwards, but before encountering Lemal at Club 106, Lyons made the decision to conceal the firearm. When Lemal saw a weapon on the ground near Lyons, Lemal

ordered Lyons not to move, but Lyons fled the scene. While Lemal was in pursuit he watched as Lyons removed the firearm from his waistband and threw it to the ground. Lyons' conduct of acquiring the firearm and concealing it in his waistband resulted in two different offenses that were committed separately and with a separate animus. It is the defendant's burden to establish his right to merger. Accordingly, the trial court did not err in failing to merge the weapons under disability and carrying concealed weapon charges.

{¶41} Lyons next argues that his tampering with evidence conviction should merge with one of the weapons convictions. He was convicted of tampering with evidence, which required proof that he knew an official proceeding or investigation was in progress and that he attempted to conceal a thing with the purpose to impair its availability as evidence in such proceeding or investigation. R.C. 2921.12(A)(1). Lyons was also convicted of having a weapon under disability as a result of acquiring and possessing a firearm, R.C. 2923.13(A)(3), and carrying a concealed weapon which required proof that he knowingly carried or concealed on his person a deadly weapon or dangerous ordnance. R.C. 2923.12(A)(2).

{¶42} These offenses are distinct and were committed with a separate animus or motivation. First, Lyons acquired and possessed a firearm at some time prior to the fight at the club. Second, Lyons then concealed the firearm when he placed it in his waistband. Finally, he discarded the firearm while being chased by police; specifically, to conceal the firearm with the purpose to impair its availability as evidence. A review of the elements that constitute the charges of tampering with evidence, having a weapon under disability and carrying a concealed weapon demonstrate not only that the offenses are not aligned, but the crimes are so dissimilar that the commission of one in no way automatically results in the commission of the other.

{¶43} Accordingly, the trial court did not err in failing to merge these offenses and Lyons sixth assignment of error is meritless.

## Cumulative Error

**{¶44}** In his fourth of six assignments of error, Lyons asserts:

Because of cumulative error, Lyons was denied his right to a fair trial: By the prosecutor's indoctrination of the jury during voir dire; the paneling of a partial jury; and defendant's ineffectiveness at trial.

**{¶45}** The doctrine of cumulative error provides that a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though singularly each error alone does not individually constitute a cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-97, 509 N.E.2d 1256 (1987).

**{¶46}** As we have held that Lyons' other assignments of error are meritless, he has demonstrated no error and the cumulative error doctrine does not apply. Accordingly, Lyons' fourth assignment of error is meritless.

**{¶47}** In sum, there was no error during voir dire, the tampering with evidence conviction is supported by sufficient evidence, none of Lyons' convictions should have been merged for sentencing, and he had the assistance of effective trial counsel. Accordingly, Lyons' assignments of error are meritless and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.