[Cite as *State v. Morris*, 2023-Ohio-1765.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29555 |
| | : | |
| v. | : | Trial Court Case Nos. 2020 CR 03962; |
| | : | 2022 CR 01403 |
| LEON AARON MORRIS | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 26, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

CHRISTOPHER BAZELEY, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant, Leon Aaron Morris, appeals from his convictions and sentences on one count of having weapons under disability, a third-degree felony, and one count of carrying concealed weapons, a fourth-degree felony. After Morris pled guilty to the charges, the trial court imposed concurrent 12-month sentences.

{¶ 2} According to Morris, the trial court erred in failing to consider whether the offenses should be merged for purposes of sentencing. However, Morris did not object to the court's failure to merge his convictions, and a plain error analysis applies. Under applicable case law and the record, the offenses were committed with a separate animus, merger was not warranted, and no plain error occurred. Consequently, Morris's sole assignment of error will be overruled, and the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} The background of this matter involves two cases, Montgomery C.P. No. 2020 CR 03962, and Montgomery C.P. No. 2022 CR 01403. While only one case, Case No. 2022 CR 01403, is under consideration in this appeal, Morris filed a notice of appeal that included both case numbers.

{¶ 4} On March 30, 2021, an indictment was filed in Montgomery County Common Pleas Court and was designated as 2020 CR 03962. The indictment charged Morris with aggravated possession of drugs (methamphetamine) (bulk but less than five times bulk), a third-degree felony, and possession of cocaine (less than five grams), a fifth-degree felony. These crimes occurred on September 12, 2020.

{¶ 5} On August 20, 2021, Morris pled guilty to possession of cocaine, and the State agreed to dismiss the aggravated possession of drugs charge. After accepting the plea and finding Morris guilty, the trial court sentenced Morris to various community control sanctions ("CCSs"). The termination entry was filed on October 15, 2021, and the sanctions included: obtaining a substance abuse assessment and completion of any

recommended treatment; refraining from use of illegal drugs or alcohol; and not being in any place or vehicle where Morris knew or had reasonable cause to know that any illegal drugs, stolen property, or firearms were present. The court also placed Morris on a "no breaks" status. Morris did not appeal from that judgment.

{¶ 6} On December 29, 2021, the court issued an entry and order for capias in Case No. 2020 CR 03962 after Morris failed to appear for an assessment as ordered. Less than one month later, on January 28, 2022, a police officer observed Morris's vehicle idling in a parking lot and discovered that the vehicle's owner (Morris) had outstanding warrants in Case No. 2020 CR 03962 and a 2021 municipal court case. *See* Presentence Investigation Report for 2022 CR 01403 ("PSI 2"), p. 2.[1]

{¶ 7} When the officer approached the vehicle, Morris gave him the name and driver's license for another person (Morris's brother), but the BMV photo did not match Morris. At that point, the officer discovered Morris's real identity and arrested him. *Id.* An inventory search of the vehicle after the arrest revealed a loaded firearm, a bag of suspected crack cocaine, and two suspected bags of marijuana that were visible in the center console. *Id.* Later, a laboratory examination confirmed that the suspected drugs included 0.17 grams of cocaine. *Id.*

{¶ 8} On the day of the arrest, the State filed a notice of CCS revocation in Case No. 2020 CR 03962, alleging seven rule violations. Morris then appeared in court on February 17, 2022, and admitted having violated Rule Five (absconding). The trial court

---

[1] The PSI document that was submitted in this appeal includes two reports. One is for Case No. 2020 CR 03962, and the other is for Case No. 2022 CR 01403. We will be citing the latter report and will refer to it as "PSI 2."

noted that it would not require revocation at that time. Instead, Morris would continue on community control, would go directly to the Nova program, and would be on electronic monitoring. Transcript of Proceedings, Case No. 2020 CR 03962 (Revocation Hearing, Feb. 17, 2022), p. 7 and 9. At that time, an indictment for the January 28, 2022 incident had not yet been filed. *Id.* at p. 10. Consistent with the hearing, the court filed an order modifying CCS in Case No. 2020 CR 03962 on February 22, 2022. Morris filed a pro se appeal from the court's order on March 2, 2022; the appeal was docketed as 2d Dist. Montgomery No. 29409, and counsel for the appeal was appointed on March 30, 2022. Morris later voluntarily dismissed the appeal. *See State v. Morris*, 2d Dist. Montgomery No. 29409 (Decision & Final Judgment Entry, Aug. 11, 2022).

{¶ 9} On February 24, 2022, Morris had entered residential treatment in Case No. 2020 CR 03962, but he left on March 3, 2022, against medical advice. PSI 2 at p. 5. On March 4, 2022, another capias was filed in Case No. 2020 CR 03962, noting that Morris had absconded. The State then filed a notice of CCS revocation on June 1, 2022, alleging violations of several rules.

{¶ 10} An indictment was then filed in Montgomery County Common Pleas Court on June 10, 2022, and was designated as Case No. 2022 CR 01403 (the case at issue in this appeal). The indictment charged Morris with four counts arising from the January 28, 2022 incident: (1) having weapons under disability (prior drug conviction), a third-degree felony; (2) carrying concealed weapons (loaded/ready at hand), a fourth-degree felony; (3) improper handling of a firearm in a motor vehicle (loaded/no license), a fourth-degree felony; and (4) possession of cocaine (less than five grams), a fifth-degree felony.

By that time, Morris had been arrested and was in the Montgomery County Jail. On June 14, 2022, Morris appeared for arraignment in Case No. 2022 CR 01403 and pled not guilty.

{¶ 11} On July 7, 2022, Morris again appeared in court. This time, his appearance involved both the revocation in Case No. 2020 CR 03962 and the recent indictment in Case No. 2022 CR 01403, which the parties had agreed to resolve. Transcript of Proceedings (Revocation/Plea Hearing) ("Plea Tr.") (July 7, 2020), p. 7-8. During this hearing, the following exchange occurred:

Mr. Suellentrop [defense counsel]: Your Honor, I do believe that we have an agreement, a global agreement to resolve both the revocation matter that's set for this morning, as well as the 2022 new indictment. I have two plea forms in front of me on the 2022 case that would involve a plea of guilty to the Count I, weapons under disability, a third-degree felony, and Count II, carrying concealed weapons. Those would, as I understand them, they would merge. The Counts III and IV, improper handling and possession of cocaine, respectively, F4 and F5 would be dismissed. The State would agree that if prison would be imposed, it would be a cap of 18 months and that this particular sentence would also at least run concurrently or be the same cap in terms of a potential punishment sentence for the revocation matter, for which Mr. Morris would be entering an admission.

The Court: Is that the State's agreement?

Mr. Merrell: That's correct, Judge. Thank you.

The Court: I don't typically enter into agreements with regard to revocation, but I'll honor the State's agreement in this case, but I will make the decision regarding sentence.

Plea Tr. at p. 7-8.

{¶ 12} Following that discussion, the court conducted a Crim.R. 11(C) colloquy, including the fact that Morris's plea in Case No. 2022 CR 01403 would constitute an admission to rule violation number one listed in the notice of community control revocation for Case No. 2020 CR 03962. *Id.* at p. 9-18. After the colloquy, Morris signed the plea forms and pled guilty to Counts I and II of the indictment in Case No. 2022 CR 01403. *Id.* at p. 18-19. The court accepted the plea, concluded it had been knowingly, intelligently, and voluntarily made, and found Morris guilty of the charges. *Id.* at p. 19. The court also found Morris guilty of the revocation violation, ordered a PSI, and set both matters for disposition on July 21, 2022. *Id.* at p. 19-20.

{¶ 13} The sentencing hearing then took place as scheduled. Relevant to the current appeal, the court sentenced Morris to 12 months in prison for having a weapon under disability and to 12 months in prison for carrying a concealed weapon. Further, the court ordered the terms to be served concurrently. Transcript of Proceedings (Sentencing, Arraignment, Revocation/Sentencing), p. 13-14. The court did not mention merger, nor did the parties make any comment on that subject.

{¶ 14} On July 21, 2022, the trial court filed a termination entry in Case No. 2022 CR 01403, reflecting the 12-month concurrent sentences imposed during the sentencing hearing. The court also filed an entry in Case No. 2020 CR 03962 on July 22, 2022.

The court found that the circumstances resulting in suspension did not warrant revocation of community control and restored Morris to active community control for up to five years. In the same entry, the court ordered Morris's probationary status terminated in view of his commitment on subsequent offenses, discharged Morris, suspended all financial obligations, dismissed the capias that had been issued, and closed the case. Entry Reinstatement/Withdrawal of Capias Issued on 3/4/2022/Termination of Community Control (Administrative) (Subsequent Offense) (July 22, 2022).

{¶ 15} On August 17, 2022, Morris filed a combined pro se notice of appeal from the judgment entries in both cases, and the appeal was docketed as 2d Dist. Montgomery No. 29555. On the same day, Morris filed a second pro se notice of appeal in both cases, and that appeal was docketed as 2d Dist. Montgomery No. 29558. The latter appeal was later dismissed because Morris failed to respond to a show cause order. We also found the appeal duplicative due to the earlier-filed appeal in 2d Dist. Montgomery No. 29555. *See State v. Morris*, 2d Dist. Montgomery No. 29558 (Decision & Final Judgment Entry, Sept. 13, 2022). The appeal thereafter proceeded in Case No. 29555, which is the appeal currently before us.

{¶ 16} On August 23, 2022, we filed a show cause order in the current appeal, stating that we did not think a final appealable order existed with respect to Case No. 2020 CR 03962. We believed that the trial court's July 22, 2022 order did not appear to involve a substantial right, since the court had reinstated Morris to community control, had terminated community control, and had dismissed the case. *See State v. Morris*, 2d Dist. Montgomery No. 29555 (Show Cause Order, Aug. 23, 2022). When Morris failed

to respond to our show cause order, we filed an order stating that the current appeal would proceed only with respect to Case No. 2022 CR 01403. *State v. Morris*, 2d Dist. Montgomery No. 29555 (Order, Sept. 8. 2020). We also appointed counsel for Morris.

{¶ 17} Subsequently, we issued an order requiring the clerk to transmit various items, including one volume filed in 2d Dist. Montgomery No. 29409, as well as summaries of the docket, journal entries, and all original papers filed in 2d Dist. Montgomery Nos. 29409, 29514 (an appeal that is not relevant here), and 29558. *See State v. Morris*, 2d Dist. Montgomery No. 29555 (Order, Oct. 13, 2022), p. 1. We also directed the clerk to thereafter file the App.R. 11(B) notice that the record was complete. *Id.* The clerk complied with our order and also filed electronic transcripts of the proceedings below. In addition, the record was later supplemented with the PSI, which was filed under seal.

{¶ 18} Again, while we have included matters relating to Case No. 2020 CR 03962 as background, we are considering only issues pertaining to Case No. 2022 CR 01403, which involves Morris's convictions for having weapons under disability and carrying a concealed weapon. With this background in mind, we turn our attention to Morris's assignment of error.

## II.  Merger

{¶ 19} In a sole assignment of error, Morris states that:

The Trial Court Erred When It Failed to Consider Whether the Offenses of Having a Weapon Under Disability and Carrying a Concealed

Weapon Merged.

**{¶ 20}** Morris contends that the trial court committed plain error in failing to decide whether to merge the offenses of having a weapon under a disability and carrying a concealed weapon. According to Morris, while a majority of appellate courts have concluded that these charges do not merge, some courts have "at least tacitly noted that merger of those offenses was proper." Appellant's Brief, p. 2-3. In response, the State argues that no error or plain error occurred because a different mental state is required for each crime. Therefore, the convictions should not have been merged.

**{¶ 21}** We note that de novo review applies to decisions on whether to merge certain offenses as allied offenses under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. We also agree that a plain error analysis applies here, since Morris did not object when the trial court failed to merge the convictions for sentencing purposes.

**{¶ 22}** "Ordinarily, a failure to bring an error to the attention of the trial court at a time when the court could correct that error constitutes a waiver of all but plain error." *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, ¶ 22 (2d Dist.), citing *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990).

**{¶ 23}** "Under Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the

meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' " (Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The Supreme Court of Ohio has "interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 205, 749 N.E.2d 274 (2001). (Other citations omitted.) "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 24} We have said that "[f]ailure to merge allied offenses of similar import is plain error." *State v. Rogers*, 2d Dist. Greene No. 2011 CA 0057, 2012-Ohio-4451, ¶ 5, citing *State v. Coffey*, 2d Dist. Miami No. 2006-CA-6, 2007-Ohio-21, ¶ 14, and *State v. Fairman*, 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, ¶ 56. However, the Supreme Court of Ohio recently indicated in a merger case that failing to merge offenses is not automatically plain error.

{¶ 25} In *State v. Bailey*, Ohio Slip Opinion No. 2022-Ohio-4407, __ N.E.3d __, the court stressed that "[t]he elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention." *Id.* at ¶ 9, citing *Barnes* at 27. The court noted in *Bailey* that these elements are: (1) error, which involves deviation from a legal rule; (2) the error is obvious; and (3) a reasonable probability exists that the error caused prejudice, i.e., the error affected the trial's outcome. *Id.* at ¶ 8, 10, and 14, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. (Other

citations omitted.)

{¶ 26} *Bailey* reversed the judgment of the First District Court of Appeals, which had held that kidnapping and rape convictions were allied offenses that should have been merged and that the trial court had committed plain error by failing to merge them. *Id*. at ¶ 4. In reversing, the court remarked that because merger involves factual analysis, it can "lead to exceedingly fine distinctions." *Id.* at ¶ 11, citing *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52. The court then found that even assuming "that the trial court erred by not merging the kidnapping and rape counts, the facts of the case indicate that such an error was not obvious." *Id.* at ¶ 14. Finally, the court emphasized that:

> Application of the law governing the merger of allied offenses is dependent on the specific facts of each case. Here, it is clear to us that in an area of law so driven by factual distinctions, any asserted error was not obvious.

*Id.* at ¶ 16.

{¶ 27} The concurring opinion went on to explain that the First District had read *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, too broadly. This was because *Underwood* did "not support the First District's conclusion that a failure to merge allied offenses of similar import always constitutes plain error, even if the error is not obvious." *Id.* at ¶ 18 (Fischer, J., concurring). Justice Fischer noted that *Underwood* involved whether "an agreed-upon sentence is reviewable when it includes separate sentences for allied offenses of similar import." *Id.* at ¶ 20, citing *Underwood*

at ¶ 19.  Justice Fisher further observed that in *Underwood*:

> This court held that a defendant's plea to multiple counts does not affect the sentencing court's mandatory duty to merge allied offenses of similar import. * * * Therefore, we held that a court of appeals may review a defendant's claim that the court imposed separate sentences for allied offenses of similar import, even when the defendant had agreed to the sentence. * * * It was within that context that this court held that a trial court's failure to merge allied offenses of similar import may be considered plain error, even if the parties jointly agreed upon the sentence.

> In *Underwood*, the trial court's failure to merge the allied offenses was clearly plain error because the state had conceded that the offenses were allied offenses of similar import in its sentencing report.   But nowhere in *Underwood* did this court hold that a reviewing court may forego a plain-error analysis when allied offenses are involved.   To the contrary, this court made clear that plain-error analysis still applies * * *.

(Citations omitted.)   *Bailey* at ¶ 20-21 (Fischer, J., concurring).   Thus, the proper standard is not that failure to merge allied offenses "is" plain error, i.e., it is not automatic. Failure to merge allied offenses "may" be plain error, depending on the circumstances. Again, traditional principles for assessing plain error apply.

{¶ 28} The Supreme Court of Ohio has also said that "an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent

that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 3.

{¶ 29} With these points in mind, we will consider the application of the allied offenses statute to this case. "R.C. 2941.25(A) allows only a single conviction for conduct that constitutes 'allied offenses of similar import.' But under R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

{¶ 30} "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

{¶ 31} Dissimilar import occurs "if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. Animus has been defined as "purpose or, more

properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979) "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances." *Id.*

**{¶ 32}** " ' "Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, [a] priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." ' " *State v. Crossley*, 2020-Ohio-6639, 164 N.E.3d 585, ¶ 23 (2d Dist.), quoting *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 70 (2d Dist.). (Other citation omitted.) "In other words, '[i]f the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.' " *Id.*, quoting *State v. Hudson*, 2013-Ohio-2351, 993 N.E.2d 443, ¶ 54 (2d Dist.).

**{¶ 33}** In the case before us, Morris was charged with and pled guilty to having a weapon under disability in violation of R.C. 2923.13(A)(3), due to his prior conviction of a felony offense of possession of cocaine (Count I). He was also charged with and pled guilty to carrying concealed weapons in violation of R.C. 2923.12(A)(2) (Count II).

**{¶ 34}** As relevant here, R.C. 2923.13 states that:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration,

distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶ 35}** In turn, R.C. 2923.12 provides that "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * (2) A handgun other than a dangerous ordnance."[2]

**{¶ 36}** We have said that these two crimes involve a separate animus. In *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, we noted that " ' "[t]he intent, or animus, necessary to commit the crime of carrying a concealed weapon, is to carry or conceal, on the person or ready at hand, a deadly weapon or dangerous ordnance. The gist of the offense is concealment." ' " *Id.* at ¶ 48, quoting *State v. Rice*, 69 Ohio St.2d 422, 427, 433 N.E.2d 175 (1982), quoting *State v. Nieto*, 101 Ohio St. 409, 413, 130 N.E. 663 (1920). *Accord State v. Shoecraft*, 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 59.

**{¶ 37}** In contrast, "[t]he gravamen of the offense of having a weapon while under disability, is to 'knowingly * * * acquire, have, carry, or use,' a weapon while under a legal disability. It may be concluded that there is a difference in the mental state required for both crimes * * *." *Rice* at 426-427. *Accord Young* at ¶ 48, and *Shoecraft* at ¶ 59.

---

[2] The statutes for both offenses were amended after Morris's crimes were committed and after the indictment was filed. *See* Am.Sub.H.B. 281, 2022 Ohio Laws 165, effective April 6, 2023 (amending R.C. 2923.13). *See also* Sub.S.B. 215, 2022 Ohio Laws 81, effective June 13, 2022, and Am. Sub.S.B. 288, 2022 Ohio Laws 160, effective April 4, 2023 (both amending R.C. 2923.12). However, the relevant language in both statutes did not change.

**{¶ 38}** Notably, *Rice* was among cases decided shortly after R.C. 2941.25 became effective in 1972. These early cases "held that before two offenses would be deemed to constitute allied offenses of similar import, 'there must be a recognized similarity between the elements of the crimes committed,' and where the facts of a case revealed that the same conduct by the defendant constituted the two offenses, a defendant should be afforded the protection of R.C. 2941.25(A)." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 15, citing *Logan*, 60 Ohio St.2d at 128, 397 N.E.2d 1345. Various tests followed, including "a two-step test that, first, compared the elements of the offenses involved and, second, reviewed the defendant's conduct and animus for each offense." *Id.*, citing *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988). This test was then "altered to require an abstract analysis of the offenses that were being compared under R.C. 2941.25(A)." *Id.*, citing *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), paragraph one of the syllabus.

**{¶ 39}** Subsequently, in *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court overruled *Rance*, stressing that "abstract analysis of the elements of a crime was insufficient and that the defendant's conduct must be considered when evaluating whether offenses are allied." *Ruff* at ¶ 16, citing *Johnson* at ¶ 44. In *Ruff*, the court further clarified the analysis. This was based on the court's belief that "*Johnson* was incomplete because R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of dissimilar import, the defendant may be convicted of all of the offenses." *Id.*

**{¶ 40}** As noted, *Ruff* clarified that three questions must be answered in deciding

"when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?   An affirmative answer to any of the above will permit separate convictions.   The conduct, the animus, and the import must all be considered."   *Id.* at ¶ 31.

{¶ 41} However, after *Ruff* was decided, courts continued to apply "a line of cases predating *Ruff*, all of which had concluded that carrying a concealed weapon and having a weapon while under disability are committed with separate animus, thus obviating merger."   *State v. Robinson*, 2015-Ohio-4649, 48 N.E.3d 1030, ¶ 41 (12th Dist.), citing *State v. Hobbs*, 10th Dist. Franklin No. 14AP-225, 2015-Ohio-2419, ¶ 35.   The reason for this was that "*Ruff* does not change the rationale or validity of those cases because *Ruff* still prohibits merger if offenses are committed with separate animus."   *Hobbs* at ¶ 35, citing *Ruff* at ¶ 31.   *Accord Robinson* at ¶ 41; *State v. Lyons*, 2017-Ohio-4385, 93 N.E.3d 139, ¶ 39 (7th Dist.); *State v. Carradine*, 2015-Ohio-3670, 38 N.E.3d 936, ¶ 57 (8th Dist.).

{¶ 42} The "line" of cases pre-dating *Ruff* that are listed in *Hobbs* include: "*State v. Rice*, 69 Ohio St.2d 422, 427 (1982); *State v. Willis*, 12th Dist. No. CA-2012-08-155, 2013-Ohio-2391, ¶ 41-43; *State v. Young*, 2d Dist. No. 2011-Ohio-747, ¶ 46-49; [and] *State v. Ryan*, 7th Dist. No. 10-MA-173, 2012-Ohio-1265, ¶ 53."   *Hobbs* at ¶ 35.

{¶ 43} Our opinion in *Shoecraft* was issued well after *Ruff* was decided and is consistent with the above cases.   While we did not directly cite *Rice*, we cited *Young* (which did cite *Rice*) and used the same reasoning about animus to find that the

defendant's convictions for carrying a concealed weapon and having a weapon under disability should not be merged. *Shoecraft*, 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, at ¶ 59.

{¶ 44} In *Robinson*, the court found that the defendant had a separate animus for carrying a concealed weapon and for having a weapon under disability. In this regard, the court stated that:

> The purpose or immediate motive behind carrying a concealed weapon is to unlawfully hide a weapon from plain view. The purpose or immediate motive behind having a weapon while under disability is to possess said weapon despite being legally prohibited from doing so. These animi are clearly distinct. Someone can purposefully have a weapon in contravention of legal prohibition while not concealing it, and vice versa. Therefore, merger of these offenses was unwarranted.

*Robinson*, 2015-Ohio-4649, 48 N.E.3d 1030, at ¶ 43.

{¶ 45} Under this view, merger would not be appropriate here. As to the surrounding circumstances, the State recited the content of the indictment, which was phrased in terms of the statutory language. Plea Tr. at p. 16-17. However, Morris clearly knew, based on his prior convictions for drug offenses in both state and federal courts, that he was not allowed to have, carry, or use firearms. In fact, as noted, one of the CCS conditions in Case No. 2020 CR 03962 was that Morris not be in any place or vehicle where firearms were present.

{¶ 46} Furthermore, the record does contain the PSI, which reveals that while

Morris initially denied knowing the firearm was in the automobile, he later admitted he knew the gun was there; he also admitted touching it. PSI 2 at p. 2. During his presentence investigation interview, Morris also said that at the time of the offenses, he was struggling with issues, including the loss of his son. When Morris was in the car with the loaded gun, which was in the console and was discovered during a later inventory search, his intent was to consume all the drugs in the car and then use the gun to commit suicide. *Id.* Morris clearly had different motives for the offenses, and failing to merge them was not plain error.

{¶ 47} As noted, Morris contends that some appellate courts have implicitly acknowledged that merger of these two offenses is proper. Appellant's Brief at p. 3. In fact, a few courts have said, after *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, that "[i]t is possible to commit the offenses of carrying a concealed weapon and having a weapon while under disability with the same conduct." *State v. Carradine*, 2015-Ohio-3670, 38 N.E.3d 936, ¶ 56 (8th Dist.). The issue, however, is "whether the two offenses were in fact committed with a separate animus." *Id. Accord Lyons*, 2017-Ohio-4385, 93 N.E.3d 139, at ¶ 39. *See also State v. Curtis*, 1st Dist. Hamilton No. C-150174, 2016-Ohio-1318, ¶ 31 (noting that the court of appeals had held that charges of carrying concealed weapon and having weapon under disability do not always merge). As indicated, however, a separate animus is involved in the case before us, and the trial court did not commit plain error in failing to merge the convictions.

{¶ 48} In his reply brief, Morris discounts the State's position, which is that plain error did not occur because the convictions should not have been merged. According to

Morris, this is not the issue; instead, the issue is the trial court's failure to even consider merger.   *See* Appellant's Reply Brief at p. 1.   However, under the standard for harmless error, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."   Crim.R. 52(A).   If the offenses in question should not have been merged, failure to consider merger did not affect Morris's substantial rights.

{¶ 49} Furthermore, the trial court specifically stated during the plea hearing that while it accepted the State's agreement as to the revocation issue, it would make its own decision as to sentencing.   Plea Tr. at p. 8.   " 'A trial court is not bound to accept the State's recommended sentence in a plea agreement.' "   *State v. Inderrieden*, 2d Dist. Miami No. 2022-CA-2, 2022-Ohio-3073, ¶ 7, quoting *State v. Downing*, 2d Dist. Greene No. 2019-CA-72, 2020-Ohio-3984, ¶ 34.   (Other citation omitted.)

{¶ 50} In addition, the trial court told Morris during the plea hearing about the possible sentences on each charge and then said that the "total possible prison sentence" could be 54 months.   *Id.* at p. 11-12.   This encompassed the total sentence that could be imposed if the court imposed maximum sentences on both charges and ordered the sentences to be served consecutively.   *Id.*   Notably, the trial court ended up imposing less than the 18-month sentence to which the parties had agreed.

{¶ 51} We do note that as in *Underwood*, the State here said that the offenses would merge.   *Compare* Plea Tr. at p. 8 and *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 5 (noting the State had commented in its sentencing memorandum that various counts of theft were allied offenses).   In *Underwood*, the State also appeared to have breached its sentencing agreement, although the defendant did

not raise that point.   *Id.* at ¶ 5 and fn. 2.

**{¶ 52}** The offenses *in Underwood* were different (theft) than the offenses involved here.   As we said, the offenses in the case before us have been held to have a separate animus.   Furthermore, in *Underwood*, the court did not discuss any specific animus that may have been involved; the primary consideration was whether R.C. 2953.08(D)(1) barred "appellate review of a sentence that has been jointly recommended by the parties and imposed by the court when the sentence includes multiple convictions for offenses that are allied offenses of similar import."   *Id.* at ¶ 33.   In view of the above factors, *Underwood* would not compel a finding of plain error here.

**{¶ 53}** Finally, Morris has not argued that he should have been allowed to withdraw his plea or that his plea should be rescinded, which can be allowed in cases where the State breaches a plea agreement.   *E.g.*, *State v. Mathews*, 8 Ohio App.3d 145, 456 N.E.2d 539 (10th Dist.1982).   Here, the State did not breach the plea agreement.

**{¶ 54}** Based on the preceding discussion, no plain error occurred regarding merger.   Morris's single assignment of error therefore is overruled.

### III.   Conclusion

**{¶ 55}** Morris's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.